Michael R. Lozeau (State Bar No. 142893)
Rebecca L. Davis (State Bar No. 271662)
LOZEAU DRURY LLP
410 12th Street, Suite 250
Oakland, CA 94607
Tel: (510) 836-4200
Fax: (510) 836-4205
E-mail: michael@lozeaudrury.com
         rebecca@lozeaudrury.com

Attorneys for Plaintiff
CALIFORNIA SPORTFISHING PROTECTION ALLIANCE

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA SPORTFISHING PROTECTION ALLIANCE, a non-profit corporation,<br><br>Plaintiff,<br><br>vs.<br><br>KEEFE KAPLAN MARITIME, INC., a corporation,<br><br>Defendant. | Case No. 18-cv-04861-MMC<br><br>Assigned to Hon. Maxine M. Chesney<br><br>**[PROPOSED] CONSENT JUDGMENT** |

The following Consent Judgment is entered into by and between Plaintiff California Sportfishing Protection Alliance ("CSPA" or "Plaintiff") and Defendant Keefe Kaplan Maritime, Inc. ("KKMI" or "Defendant"). The entities entering into this Consent Judgment are each referred to individually as a "Settling Party" and together as the "Settling Parties."

**WHEREAS**, CSPA alleges that it is a 501(c)(3) non-profit, public benefit corporation duly organized and existing under and by virtue of the laws of the State of

California, dedicated to the protection, enhancement, and restoration of California's rivers, lakes, bays and waterways, including the San Francisco Bay and Richmond Inner Harbor. Bill Jennings is the Chairperson, and a member, of CSPA. **WHEREAS,** Defendant KKMI is the owner and operator of a boat repair facility located at 530 West Cutting Boulevard in Richmond, California (the "Facility"). A map of the Facility is attached hereto as Exhibit A.

**WHEREAS**, storm water discharges associated with industrial activity at the Facility are regulated under the Federal Water Pollution Control Act ("Clean Water Act" or "the Act") and the National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Water Resources Control Board], Water Quality Order No. 2014-0057-DWQ) (the "Permit").

**WHEREAS**, on August 10, 2018, CSPA filed the above-captioned action, alleging violations of Section 301(a) of the Act, and violations of the Permit at the Facilities ("Complaint");

**WHEREAS**, KKMI denies all allegations set forth in the 60-Day Notice letter and Complaint relating to the Facility;

**WHEREAS**, the Settling Parties, through their authorized representatives and without either adjudication of CSPA's claims or any admission by KKMI of any alleged violation or other wrongdoing, believe it is in their mutual interest and choose to resolve in full CSPA's allegations in the 60-Day Notice letter and Complaint through settlement and avoid the cost and uncertainties of further litigation;

**NOW THEREFORE IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES, AND ORDERED, ADJUDGED AND DECREED BY THE COURT, AS FOLLOWS:**

1. The Court shall retain jurisdiction over this matter for purposes of enforcing any of the terms of this Consent Judgment.

- 2 -

[Proposed] Consent Judgment                                          Case No. 18-cv-04861-MMC

## I. AGENCY REVIEW, EFFECTIVE DATE, AND TERM OF CONSENT JUDGMENT

2. **Agency Review:** Plaintiff shall submit this Consent Judgment to the United States Department of Justice and the U.S. EPA (collectively "Federal Agencies") within three (3) business days of the final signature of the Settling Parties for agency review, consistent with 40 C.F.R. § 135.5. In the event that the Federal Agencies object to entry of this Consent Judgment, the Settling parties agree to meet and confer to attempt to resolve issue(s) raised by the Federal Agencies. Promptly upon notification of completion of the Federal Agencies' review, the Parties shall submit the Consent Judgment to the Court for entry.

3. **Effective Date**: The Effective Date of this Consent Judgment shall mean the day this Consent Judgment is entered by the Court.

## II. COMMITMENTS OF KKMI

4. KKMI shall develop and implement the BMPs identified herein.

5. Listing the BMPs identified herein shall not preclude KKMI from implementing other BMPs not listed, and does not require amendment of this Consent Judgment in the event that KKMI implements additional BMPs beyond those listed.

6. **Maintenance of Implemented Storm Water Controls.** KKMI agrees that the Facility shall maintain in good working order all storm water collection and management systems currently installed or to be installed pursuant to this Consent Judgment, including but not limited to, existing housekeeping measures.

7. **Improvements to Housekeeping Measures:** Beginning within 30-days of the Effective Date of this Consent Judgment, KKMI shall conduct daily, localized manual sweeping in specified work and material handling areas. All manual sweeping activities shall be recorded in a sweeping log.

8. Beginning within 30-days of the Effective Date of this Consent Judgment, KKMI shall arrange for mechanical sweeping of all accessible paved areas at the site once per week using an industrial grade Tennant Model S20EV and a Tennant Model

3640 regenerative sweeper. All mechanical sweeping activities shall be recorded in a sweeping log.

9. **Structural Improvements to Storm Water Management Measures:** Within 30-days of the Effective Date of this Consent Judgment, KKMI shall install and maintain Cleanway system filters containing MetalZorb media designed to treat metals at each of the Facility's drainage inlets.

10. KKMI shall, prior to December 31, 2019, resurface approximately 19,200 square feet of pavement. Said area is depicted on the Site Maps. KKMI shall not use any pavement sealant consisting of greater than 20% coal tar pitch.

11. Within thirty (30) days of the Effective Date, KKMI shall employ the use of air-powered orbital vacuum sanders, in conjunction with portable dust collection systems suitable for the marine industry, similar or comparable in practice to the MIRKA Sander, 6" pad (Model MRP-680CV) compressed air powered, with MIRKA Vacuum (Model MV 912) electric powered. MIRKA Cart and Coaxial Air Supply/Vacuum Hose (Model MAI 912 and MV-HA33). KKMI shall train all applicable employees on the use of said sanders and dust control technologies.

12. In addition to the above training, KKMI shall conduct training for all appropriate employees to explain the requirements of the Facility SWPPP to the extent applicable to such employee.

13. Training shall focus on the employee's role in implementing various storm water control measures including, for example, implementation of BMPs, sweeping, painting, and dry sanding methods, or Facility inspections. Training shall be conducted bilingually (i.e. Spanish/English or other pertinent language) to the extent that such employee is not reasonably able to comprehend training in English. Where appropriate, KKMI shall integrate any new training requirements resulting from this Agreement into the Facilities' SWPPP. KKMI shall update the SWPPP, where appropriate, to identify the positions responsible for carrying out stormwater management, process water

management, monitoring, sampling, and SWPPP implementation at the facility. Within thirty (30) days of the Effective Date, KKMI shall install additional pump(s) and piping so as to eliminate drain outlet "A", as indicated on KKMI's 2017-2018 Storm Water Pollution Prevention Plan, revised January 29, 2018 per Figure 2 Site Plan.

14. Clean Marine Certification. Within 18 months of the Effective Date, KKMI shall obtain a Clean Marine Boatyard Certification Program (Certification Program) and provide a copy of such certification to CSPA. The Certification Program is based on an evaluation of many BMPs and includes input from various stakeholders, including the California Environmental Protection Agency, California's Department of Toxic Substances and their office of Pollution Prevention and Green Technology, California Coastal Commission, California Department of Boating and Waterways, California Department of Pesticides, City of San Francisco Health Department and San Francisco's BayKeeper.

15. **Installation of New Storm Water Treatment System:** Unless the levels of both copper and zinc measured in all stormwater discharges from the Facility are less than the NALs for copper and zinc established in the Permit for certain rainy seasons as prescribed in Paragraph 16 below, then not later than September 1, 2024, KKMI shall install the full treatment system ("Treatment System") described in the August 9, 2018 WaterTectonics "KKMI – Point Richmond, CA – 400GPM Stormwater Treatment System" ("WaterTectonics Proposal") attached hereto as Exhibit B and incorporated by reference. The Treatment System shall be designed and operated with the goal of achieving reduction of pollutant levels below NALs.

16. **No Need for Additional Treatment if Comply With NALs for Copper and Zinc During 2021-22 and 2022-23 Rainy Seasons**: Notwithstanding Paragraph 15 above, KKMI need not install the Treatment System if the Facility's discharges of stormwater for both the 2021-22 and the 2022-2023 reporting years are less than the NALs for copper and zinc. If the only exceedance of the copper and zinc NALs for those

- 5 -

[Proposed] Consent Judgment     Case No. 18-cv-04861-MMC

reporting years is no greater than ten percent in excess of the NAL (*i.e.* for copper, a reporting year average of .0365 mg/L and for zinc, a reporting year average of 0.286 mg/L), then, not later than June 1, 2023 and if requested by KKMI, CSPA and KKMI shall meet and confer in good faith to discuss whether they agree to amend Paragraph 15 to modify or forego the installation of the Treatment System. If such meet-and-confer effort are unsuccessful, KKMI may file a motion or request a mediation session before a Magistrate Judge.

17. **Earlier Installation of New Storm Water Treatment System Based on Excessive NAL Exceedances:** For the reporting years 2019-2020 through 2021-2022, KKMI shall accelerate the installation of the Treatment System where the measured average concentration of either copper or zinc exceed the levels set forth below:

   a. In the event the laboratory analyses of all of the storm water samples taken pursuant to the Permit for the 2019-2020 reporting year indicate that the Facility's average concentration of copper in the Facility's storm water during the 2019-2020 reporting year exceeds 1.19 mg/L, then KKMI shall install the Treatment System by not later than September 1, 2021.

   b. In the event the laboratory analyses of all of the storm water samples taken pursuant to the Permit for the 2019-2020 reporting year indicate that the Facility's average concentration of zinc in the Facility's storm water during the 2019-2020 reporting year exceeds 0.71 mg/L, then KKMI shall install the Treatment System by not later than September 1, 2021.

   c. If the deadline for installing the Treatment System was not already shortened pursuant to Paragraphs 17(a) and 17(b) above, in the event the laboratory analyses of all of the storm water samples taken pursuant to the Permit for the 2020-2021 reporting year indicate that the Facility's

average concentration of copper in the Facility's storm water during the 2020-2021 reporting year exceeds 1.19 mg/L, then KKMI shall install the Treatment System by not later than September 1, 2022.

    d. If the deadline for installing the Treatment System was not already shortened pursuant to Paragraphs 17(a) and 17(b) above, in the event the laboratory analyses of all of the storm water samples taken pursuant to the Permit for the 2020-2021 reporting year indicate that the Facility's average concentration of zinc in the Facility's storm water during the 2020-2021 reporting year exceeds 0.71 mg/L, then KKMI shall install the Treatment System by not later than September 1, 2022.

    e. If the deadline for installing the Treatment System was not already shortened pursuant to Paragraphs 17(a) through 17(d) above, in the event the laboratory analyses of all of the storm water samples taken pursuant to the Permit for the 2021-2022 reporting year indicate that the Facility's average concentration of copper in the Facility's storm water during the 2021-2022 reporting year exceeds 1.19 mg/L, then KKMI shall install the Treatment System by not later than September 1, 2023.

    f. If the deadline for installing the Treatment System was not already shortened pursuant to Paragraphs 17(a) through 17(d) above, in the event the laboratory analyses of all of the storm water samples taken pursuant to the Permit for the 2021-2022 reporting year indicate that the Facility's average concentration of zinc in the Facility's storm water during the 2021-2022 reporting year exceeds 0.71 mg/L, then KKMI shall install the Treatment System by not later than September 1, 2023.

18. **Treatment System Maintenance:** KKMI shall develop a maintenance and training plan to ensure the ongoing maintenance and effective operation of the Treatment System. Such maintenance and training plan shall be included as an exhibit to KKMI's

SWPPP.

19. **Treatment System Confirmation:** Within thirty (30) days of completing installation of the Treatment System, KKMI shall provide CSPA with photographs and correspondence confirming the installation and full operation of the system.

20. **Storm Water Pollution Prevention Plan:** By no later than thirty days after the Effective Date, KKMI shall amend its SWPPP to incorporate all changes and improvements set forth in this Agreement.

### III. FEES, COSTS, EXPENSES, AND MITIGATION.

21. As full and complete satisfaction of any fees or costs incurred by CSPA, KKMI will pay the sum of seventy-five thousand dollars ($75,000). Payment shall be made by KKMI within thirty (30) calendar days of the date this Judgment is entered. Payment by KKMI shall be made in the form of a single check payable to "Lozeau Drury LLP," The payment shall be mailed to CSPA, c/o Lozeau Drury LLP, 1939 Harrison Street, Suite 150, Oakland, CA 94612. CSPA shall retain discretion, and may make appropriate commitments to U.S. EPA and the U.S. Department of Justice, to disperse a portion of this payment for any purpose consistent with the Clean Water Act, including without limitation environmentally beneficial projects relating to water quality improvements in the San Francisco Bay watershed.

### IV. TERMINATION DATE OF AGREEMENT

22. Unless an extension or early termination is agreed to in writing by the SETTLING PARTIES and ordered by the Court, this Consent Judgment shall terminate on December 1, 2024 (the "Termination Date") or the resolution of any motion to enforce this Consent Judgment filed prior to December 1, 2024, whichever date is later.

### V. RETENTION OF JURISDICTION AND DISPUTE RESOLUTION

23. The Court shall retain jurisdiction over this matter for the purposes of enforcing its terms and conditions and adjudicating all disputes among the Settling Parties that may arise under the provisions of the Judgment. After a good-faith meet-and-

confer, any party may file a motion.

## VI. WAIVER AND RELEASES

24. In consideration of the above, and except as otherwise provided by this Consent Judgment, the Settling Parties hereby forever and fully release each other and their respective successors, assigns, officers, agents, employees, and all persons, firms and corporations having an interest in them, from any and all claims and demands of any kind, nature, or description whatsoever, and from any and all liabilities, damages, injuries, actions or causes of action, either at law or in equity, which the Parties have or could have asserted against each other arising from Plaintiff's allegations and claims as set forth in the 60-Day Notice Letter and Complaint for storm water pollution discharges at the Facility up to and including the through Termination Date of this Consent Judgment. The above waiver and release reserves each Settling Party's right to file a motion as part of the dispute resolution procedure described above in Paragraph 23. above. This waiver and release shall not extend beyond the Termination Date as a result of any enforcement proceeding brought by CSPA that continues the term of this Agreement pursuant to Paragraph 22.

25. The Parties acknowledge that they are familiar with section 1542 of the California Civil Code, which provides:

> A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.

The Parties hereby waive and relinquish any rights or benefits they may have under California Civil Code section 1542 with respect to any other claims against each other arising from, or related to, the allegations and claims as set forth in the 60-Day Notice Letter and Complaint for storm water pollution discharges at the Facility up to and including the Termination Date of this Consent Judgment.

## VII. MISCELLANEOUS PROVISIONS.

26. **No Admission of Liability.** The Parties dispute liability and no provision of this Judgment shall be construed as an admission as to any fact, finding, issue of law, or violation of law. However, this Paragraph shall not diminish or otherwise affect the obligation, responsibilities, and duties of the Parties under this Consent Judgment.

27. **Execution in Counterparts.** The Consent Judgment may be executed in one or more counterparts which, taken together, shall be deemed to constitute one and the same document.

28. **Facsimile Signatures.** The Parties' signatures to this Consent Judgment transmitted by facsimile or electronic mail transmission shall be deemed binding.

29. **Construction.** The language in all parts of this Consent Judgment, unless otherwise stated, shall be construed according to its plain and ordinary meaning. The captions and paragraph headings used in this Consent Judgment are for reference only and shall not affect the construction of this Consent Judgment.

30. **Authority to Sign.** The undersigned are authorized to execute this Consent Judgment on behalf of their respective parties and have read, understood and agreed to all of the terms and conditions of this Consent Judgment.

31. **Integrated Consent Judgment.** All covenants, representations and warranties, express or implied, oral or written, of the Parties concerning the subject matter of this Consent Judgment are contained herein.

32. **Severability.** In the event that any of the provisions of this Consent Judgment are held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

33. **Choice of Law.** This Consent Judgment shall be governed by the laws of the United States, and where applicable, the laws of the State of California.

34. **Full Settlement.** This Consent Judgment constitutes a full and final settlement of this matter. It is expressly understood and agreed that the Consent Judgment

has been freely and voluntarily entered into by the Parties with and upon advice of counsel.

35. **Force Majeure/Impossibility of Performance:** A force majeure event is any event outside the reasonable control of a Party that causes a delay in performing actions required by this Agreement that cannot be cured by due diligence. Delay in performance of an action required by this Agreement caused by a force majeure event is not a failure to comply with the terms of this Agreement, provided that as soon as reasonably possible, but in any event no later than fifteen days after the occurrence of the event, the affected Party notifies the other Party of the event, the steps that the affected Party will take to perform the action, and the projected time that will be needed to complete the action ("Force Majeure Notification"). The Parties agree to meet and confer in good faith concerning the Force Majeure Notification. The affected Party shall have the burden of establishing that it could not reasonably have been expected to avoid, and which by exercise of due diligence has been unable to overcome, the event. If that burden is met, the time for performance of the task shall be extended for a reasonable period of time following the force majeure event. If a dispute arises under this paragraph, each Party shall have the right to seek enforcement of this Consent Judgment. By way of example and not limitation, force majeure events include:

 a. Acts of God, war, insurrection, or civil disturbance;
 b. Earthquakes, landslides, fire, floods;
 c. Unusually adverse weather conditions;
 d. Restraint by court order or order of public authority; and
 e. Actions or inactions of regulatory or permitting agencies over which the affected Party has no control, and no action of the affected Party contributed to the agency's action or inaction.

36. **Negotiated Consent Judgment.** The Parties have negotiated this Consent Judgment, and agree that it shall not be construed against the party preparing it, but shall be construed as if the Parties jointly prepared this Consent Judgment, and any uncertainty

and ambiguity shall not be interpreted against any one party.

37. **Modification of the Consent Judgment.** This Consent Judgment, and any provisions herein, may not be changed, waived, or discharged unless by a written instrument signed by the Parties and approved by the Court.

38. **Assignment.** Subject only to the express restrictions contained in this Consent Judgment, all of the rights, duties and obligations contained in this Consent Judgment may be freely assigned to anyone and shall inure to the benefit of and be binding upon the Parties, their principals, officers, agents, owners, employees and other persons with a legal interest in the Parties, and all successors and assigns thereto.

39. **Mailing of Documents to CSPA/Notices/Correspondence.** Any notices or documents required or provided for by this Consent Judgment or related thereto that are to be provided to CSPA pursuant to this Consent Judgment shall be, to the extent feasible, sent via electronic mail transmission to the e-mail addresses listed below or, if electronic mail transmission is not feasible, via certified U.S. Mail with return receipt, or by hand delivery to the following address:

> California Sportfishing Protection Alliance:
>
> Bill Jennings, Chairman
> California Sportfishing Protection Alliance
> 3536 Rainier Road
> Stockton, CA 95204
> Tel: (209) 464-5067
> E-mail: deltakeep@aol.com

With copies sent to:

> Michael R. Lozeau
> Rebecca L. Davis
> Lozeau Drury LLP
> 410 12th Street, Suite 250
> Oakland, CA 94607
> E-mail: rebecca@lozeaudrury.com; michael@lozeaudrury.com

Unless requested otherwise by KKMI, any notices or documents required or provided for by this Consent Judgment or related thereto that are to be provided to KKMI pursuant to this Consent Judgment shall, to the extent feasible, be provided by electronic mail transmission to the e-mail addresses listed below, or, if electronic mail transmission is not feasible, by certified U.S. Mail with return receipt, or by hand delivery to the addresses below:

>Keefe Kaplan Maritime, Inc.:
>
>Paul Kaplan, Kenneth Keefe and Cynthia Revel
>530 West Cutting Blvd.
>Pt. Richmond, CA 94804
>Email: Paul@kkmi.com; Ken@kkmi.com; Cindy@kkmi.com

Notifications of communications shall be deemed submitted on the date that they are emailed or postmarked and sent by first-class mail or deposited with an overnight mail/delivery service. Any changes of address or addressees shall be communicated in the manner described above for giving notices.

40. If for any reason the DOJ or the District Court should decline to approve this Consent Judgment in the form presented, the Settling Parties shall use their best efforts to work together to modify the Consent Judgment within thirty (30) days so that it is acceptable to the DOJ or the District Court. If the Settling Parties are unable to modify this Consent Judgment in a mutually acceptable manner that is also acceptable to the District Court, this Consent Judgment shall immediately be null and void as well as inadmissible as a settlement communication under Federal Rule of Evidence 408 and California Evidence Code section 1152.

41. The settling Parties hereto enter into this Consent Judgment, Order and Final Judgment and submit it to the Court for its approval and entry as a final judgment.

Dated: 9 April 2019      CALIFORNIA SPORTFISHING PROTECTION
                         ALLIANCE

                    By:  /s/ Bill Jennings
                         Bill Jennings, Chairperson

Dated: April 8, 2019     KEEFE KAPLAN MARITIME, INC.

                    By:  /s/ Paul Kaplan
                         Paul Kaplan, CEO

**IT IS SO ORDERED, ADJUDGED AND DECREED.**

Date: June 12, 2019      /s/ Maxine M. Chesney
                         Honorable Maxine M. Chesney
                         United States District Court ~~Magistrate~~ Judge